## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | |
|---|---|
| GEROME SHAW, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL NO. 2:15-CV-363 |
| § | |
| JAGUAR HYDROSTATIC TESTING, § | |
| LLC, § | |
| § | |
| Defendant. § | |

## ORDER

The Court has before it Plaintiff Gerome Shaw's ("Shaw") Opposed Motion for Conditional Class Certification and Notice in this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Dkt. No. 11. After considering the motion, the complaint, the accompanying evidence, the parties' arguments, and the applicable law, the Court **GRANTS** Shaw's motion.

### I. Background

On August 27, 2015, Shaw filed this FLSA collective action lawsuit on behalf of himself and all other similarly situated to recover unpaid overtime wages, liquidated damages, attorney's fees, and costs owed to current and former Junior Operators, Operators, Field Operators and Pressure Testers who worked for Defendant Jaguar Hydrostatic Testing, LLC, ("Jaguar") over the past three years. *See generally* Compl., Dkt. No. 1.

Shaw is a former employee of Jaguar who worked as a "Field Operator/Pressure Tester" for Jaguar from April 2011 to March 2014. *Compl.* ¶ 5; *Shaw Dec.*, Dkt. No. 11-1, ¶ *1*. Jaguar is a Texas limited liability company offering hydrostatic testing services to oil and gas operators in the United States. Jaguar

has locations in Pennsylvania and Texas. *Dkt. No. 11 at ¶ 5*.[1] When Shaw first started work with Jaguar, he worked exclusively in Pennsylvania. *Shaw Dep., Dkt. No. 35 Ex. E at 29:4–30:5*. Over two years later, he began working in the Midland/Odessa area of Texas. *Id. at 30:11-17*. Shaw testified that he would fly to Texas and work for twenty-one days at a time before returning to Pennsylvania for nine days. *Id. at 50:16-22*.

Shaw's duties included maintaining and servicing oil and gas production facilities and overseeing the testing and monitoring of wells, pumps, storage facilities and other pressure control equipment. *Compl. ¶ 5*. He alleges that he was a non-exempt employee, *id. ¶ 10*, and that Jaguar paid him on a salary basis plus a day rate (or bonus), but did not pay Shaw overtime for hours worked over forty hours in a workweek. *Id. at ¶ 6*. Shaw alleges that he often worked in excess of eighty hours and sometimes in excess of one-hundred hours per week. *Id. at ¶ 10*.[2]

Shaw alleges that other employees have also been denied overtime hours in violation of the FLSA. *Id. at ¶ 12*. Shaw provides that he "is aware that Defendant made a regular practice of not paying the required overtime premium for hours worked over 40 in a workweek, but paid several different categories of employees on the same basis: salary plus a day-rate." *Id.*

Shaw seeks conditional certification of and notice to:

---

[1] Jaguar also appears to have location(s) in New Mexico. *See Rodriguez Dec., Dkt. No. 30-1, at ¶ 7* ("While employed by Jaguar, I worked in Texas and New Mexico, performing the same type of work in the oilfields.").

[2] Shaw also declares that as a Field Operator/Pressure Tester, he performed "largely technical and manual labor[-]type job duties for Jaguar" and that his "duties were physical and hard." *Shaw Dec., Dkt. No. 11 Ex. 1 at ¶ 2*. Additionally,

> As a Field Operator/Pressure Tester, I worked out in the field, which lasted days or weeks at a time. Frequently I slept in my truck for the few hours of rest I got each day. Even during my "down time," I was frequently "on call" and was required to be ready to work with my hands on the job, testing valves, performing maintenance and cleaning equipment.
> As a Field Operator/Pressure Tester, I could not alter the manner, method, or scope of the work I performed. Instead, I worked in accordance with strict policies, practices and procedures that dictated my day-to-day activities.

*Shaw Dec., Dkt. No. 11 Ex. 1 at ¶¶ 3–4.*

> All individuals who were employed by Jaguar Hydrostatic Testing, LLC. during the past three (3) years as Junior Operators, Operators, Field Operators and Pressure testers, who were paid a base salary and a day-rate/job bonus with no overtime compensation.

*Dkt. No. 11 at ¶ 23* (providing the language of the requested notice).

Shaw also seeks a judgment against Jaguar for an amount equal to Shaw's and the members of the purported class's unpaid overtime wages, an amount equal to the overtime wage damages as liquidated damages (and to the extent that liquidated damages are not awarded, an award of prejudgment interest), and all costs and attorney's fees incurred. *Compl. at 5 (Prayer for Relief)*.

Since the filing of the lawsuit, six individuals—Diego Alberto Meza ("D.A. Meza"), Juan Diego Meza ("J.D. Meza"), Joe Derrick Silos ("Silos"), Frank Rodriguez ("Rodriguez"), Joe Prado, and Joel Prado—have filed notices to opt into the lawsuit. *See Dkt. Nos. 3, 10, 21, 39.* D.A. Meza declares that he was a "Junior Operator/Field Operator/Pressure Tester" from October 2011 to September 2013. *D.A. Meza Dec., Dkt. No. 11 Ex. 2 at ¶ 3*. D.A. Meza worked in Texas and Pennsylvania. *D.A. Meza Dep., Dkt. No. 35 Ex. A at 36:13-18*. J.D. Meza declares that he was a "Field Operator/Pressure Tester" from October 2011 to September 2013. *J.D. Meza Dec., Dkt. No. 11 Ex. 3* at ¶ 3. He worked in Texas and Pennsylvania. *J.D. Meza Dep., Dkt. No. 35 Ex. B at 22:7-17*. Rodriguez declares that he was a "Lubricator/Pressure Testing Operator" from June 2014 to February 19, 2016. Dkt. No. 30 Ex. 1 at ¶ 1.[3] He worked in Texas and New Mexico. *Rodrigeuz Dep., Dkt. No. 35 Ex. C at 69:9-11*. Shaw did not file declarations of Silos, Joe Prado, or Joel Prado.

On July 18, 2017, this Court ordered supplemental briefing from Jaguar asking for:

- The estimated number of employees that fall into the categories of Junior Operator, Operator, Field Operator, and Pressure Tester for the three-year period of time for which Shaw seeks conditional certification.

---

[3] The declarations of D.A. Meza, J.D. Meza, and Rodriguez repeat verbatim several paragraphs of Shaw's Declaration regarding the conditions of work while employed by Jaguar.

- The employment classification ("exempt" or "nonexempt") of each of the above-mentioned positions; and
- The geographic locations in which Jaguar hired each of the above-mentioned positions.

Order (July 18, 2017), Dkt. No. 49. The Court also gave Plaintiffs an opportunity to respond.

## II. Legal Rule

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). Nonexempt employees are entitled to overtime pay calculated at one and one half times their regular rate of pay for all hours worked in excess of forty in a workweek. 29 U.S.C. § 207 (2016). Section 216(b) creates a cause of action for employees against employers violating FLSA requirements.

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (2016). Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). Courts routinely refer to FLSA actions brought by an employee for and on behalf of other employees under this provision as "collective actions." *Genesis Healthcare*, 133 S. Ct. at 1527 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989)). Unlike a class certified pursuant to Federal Rule of Civil Procedure 23, under the FLSA, " 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action." *Id.* at 1530. Rather, the "sole consequence" of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective

action only by filing written consent with the court. *Id.*; *see also Hoffmann-La Roche*, 493 U.S. at 171–72. District courts have discretion in deciding whether to order notice to potential plaintiffs. *Aguirre v. SBC Communications, Inc.*, No. H-05-3198, 2006 U.S. Dis. LEXIS 22211, at *15 (S.D. Tex. April 11, 2006) (Rosenthal, J.) (citing *Hoffmann-La Roche*, 493 U.S. at 170–71).

District courts generally take one of two different approaches to conditional certification. *Mooney*, 54 F.3d at 1213. The first is commonly referred to as the "Shushan approach," which treats certification of a collective action under the FLSA and certification of a class under Rule 23 identically, requiring the plaintiff to establish numerosity, commonality, typicality, and adequate representativeness. *See Shushan v. Univ, of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). The second is a "two-step ad hoc approach" that was utilized in *Lusardi v. Xerox Corp.*, 118 F.R.D 351 (D. N.J. 1987).

The Fifth Circuit has not determined which method is most appropriate; however, since *Mooney*, the Fifth Circuit has acknowledged the inapplicability of Rule 23 to § 216(b) actions. *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir. 2005). This Court routinely utilizes the *Lusardi* approach. *Jaso v. Bulldog Connection Specialists, LLC*, 2015 WL 11144603 at *2 (S.D. Tex. Oct. 15, 2015) (Tagle, J.); *see also Perez v. Valdez*, No. 1:13-CV-149, Slip Op. at 5 (S.D. Tex. Sept. 26, 2014) (Tagle, J.).

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney*, 54 F.3d at 1213. The *Lusardi* "two-step" method involves a dual step analysis of Section 216(b)'s "similarly situated" requirement. *Mooney*, 54 F.3d at 1214; *Kaluom v. Stolt Offshore, Inc.*, 474 F. Supp. 2d 866, 871 (S.D. Tex. Feb. 7, 2007). The two steps consist of a lenient "conditional certification" decision made at the so-called "notice stage," followed by a more rigorous analysis of the similarly situated issue typically precipitated by a motion for "decertification" after discovery is largely complete and the matter is ready for trial. *Mooney*, 54 F.3d at 1214.

At the first *Lusardi* stage, the district court makes a decision—usually based only on the pleadings and any affidavits that have been submitted—whether notice of the action should be given to potential class members. *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *3 (citing *Mooney*, 54 F.3d at 1213–14). The district court makes its stage one decision by "determin[ing] whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Id.*; *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010) (citing *Mooney*, 54 F.3d at 1213–14). Because the court has minimal evidence before it at this stage, the district court's determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class that provides potential class members with notice and the opportunity to opt-in. *Mooney*, 54 F.3d at 1214 n.8; *McKnight v. D. Houston, Inc.,* 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010). If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *Aguirre*, No. H-05-3198, 2006 U.S. Dis. LEXIS 22211, at *16 (citing *Mooney*, 54 F.3d at 1214).

The second stage of the *Lusardi* approach—the "decertification stage"—is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is largely complete. *Id.* (citing *Mooney*, 54 F.3d at 1214). "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice; if the class is still similarly situated, the court allows the collective action to proceed. *Id*. At no point in the certification process may the court "address the merits of the claims . . . by ruling on factual disputes or making credibility determinations." *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 691 (S.D. Tex. 2013) (citing *Mooney*, 54 F.3d at 1214); *accord. McKnight*, 756 F. Supp. 2d at 802.

While the notice stage standard is lenient, it is not automatic. *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL

3308880, at *24 (Miller, J.) (citing *Badgett v. Tex. Taco Cabana, L.P.*, No. H–05–3624, 2006 WL 2934265, at *2 (S.D. Tex. Oct. 12, 2006)). The plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *2; *Rueda v. Tecon Services, Inc.*, No. H-10-4937, 2011 WL 2566072, at *2 (S.D. Tex. June 28, 2011) (Rosenthal, J.); *Maynor v. Dow Chem. Co.*, No. G–07–0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008); *Aguirre*, No. H-05-3198, 2006 U.S. Dis. LEXIS 22211, at *19.

"A factual basis for the allegations is needed to satisfy this first step." *Rueda*, No. H-10-4937, 2011 WL 2566072, at *2; *Hall v. Burk*, 2002 U.S. Dist. LEXIS 4163, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden."). Without more, general allegations that an employer violated the FLSA do not ordinarily suffice to establish that other similarly situated employees exist. *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *3 (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)); *see also Xavier v. Belfour USA Grp., Inc.*, 585 F. Supp. 2d 873, 877 (E.D. La. 2008) ("Although the 'similarly situated' standard is lenient at the notice stage, general allegations that the employer violated the FLSA are insufficient."). "Even this lenient standard appears to require substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.' " *Aguirre*, No. H-05-3198, 2006 U.S. Dis. LEXIS 22211, at *15 (quoting *Mooney*, 54 F.3d at 1213). "Some courts place an emphasis on finding 'some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency.' " *Id.* (quoting *Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from

any generally applicable rule, policy, or practice." *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)); *see also Barron*, 242 F. Supp. 2d at 1104 ("The mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

For purposes of conditional certification under the FLSA, "[s]imilarly situated does not necessarily mean identically situated." *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *4 (quoting *England*, 370 F. Supp. 2d at 507). Rather, the plaintiff must show only that he and the employees in the proposed class are "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Id.* (citing *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007); *see also Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (quoting and applying this standard from *Ryan*); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) (same). Conversely, "if the job duties among potential members of the class vary significantly, then class certification should not be granted." *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *4; *Walker*, 860 F. Supp. 2d at 468 (quoting *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008)). Nonetheless, the "similarly situated" requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance). *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *4; *see also Heeg*, 907 F. Supp. 2d at 862 (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)).

In cases where plaintiffs have alleged FLSA violations across a company's multiple locations, courts have held that "[i]f there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate." *Rueda*, No. H-10-4937, 2011 WL 2566072, at *4; *see also Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *6 (S.D. Tex. Feb. 15, 2012) (certifying a class of store managers working in various locations under supervision of different individuals because there was evidence of a common policy);

*Blake v. Colonial Savings, F.A.*, Civ. A. No. H-04-0944, 2004 WL 1925535 (S.D. Tex. Aug. 16, 2004) (approving notice to loan officers in the defendant's Dallas office and those in remote locations based on evidence that unlawful overtime policies applied to all locations).

On the other hand, "FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice." *Rueda*, No. H-10-4937, 2011 WL 2566072, at *4; *see also Harper v. Lovett's Buffet Inc.*, 185 F.R.D. 358, 362–63 (M.D. Ala. 1999) (refusing to include in a class employees of a chain's other restaurants when the evidence of FLSA violations was limited to a single restaurant); *but see Donohue v. Francis Servs., Inc.*, No. Civ. A. 04-170, 2004 WL 1406080 (E.D. La. June 22, 2004) (holding that employers should not be able to "escape FLSA liability by making sure to underpay vast numbers" of their employees and then claim that the class definition is too broad.). In *Rueda*, the court denied the plaintiffs' motion to extend their collective action certification, which had been granted to one subclass of employees working at one particular site, Garrett Yard, to include all nonexempt company hourly employees who performed manual labor. The court reasoned that the four affidavits submitted in support of extending conditional certification did not "present[ ] sufficient evidence of a policy of denying overtime pay outside the Garrett Yard to meet even the low burden required for conditional certification" because the affiants merely "asserted awareness of other workers" complaining they were not paid overtime wages or for all the hours that they worked.' " *Rueda*, No. H-10-4937, 2011 WL 2566072, at *5 (internal quotations omitted). The court held that these affidavits did not support certification of a subclass of thousands of employees who performed manual labor outside the Garrett Yard site. *Id.*

Courts have at times refused to certify a class, even conditionally, when the relevant legal question would "require a highly individualized, fact-intensive inquiry." *See, e.g.*, *Aguirre*, No. H-05-3198, 2006 U.S. Dis. LEXIS 22211, at *16. Other courts have noted that a "decision to certify, even if subject to correction at the decertification stage, is not without consequences" because "[t]oo much leniency

at the notice stage can lead to a frivolous fishing expedition conducted by the plaintiff at the employer's expense" and "extreme leniency at the notice stage can result in conditional certification that must later be revoked at the eve of trial . . . when it becomes obvious that manageability concerns make collective action impossible." *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *20 (quoting *Lang v. DirecTV, Inc.*, No. 10–1085, 2011 WL 6934607, at *6 (E.D. La. Dec.30, 2011)) (internal quotations and alterations omitted).

However, "the possibility that the Court will be drawn into a series of minitrials on the facts" is not dispositive of a motion for classification. *See Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *4. In *Jaso*, this Court granted plaintiff's motion for conditional certification of approximately thirty to fifty representatives of an oilfield services company who regularly worked more than twelve hours in a day and more than eighty hours in a week, and alleged that they were underpaid. *Id.* at *1, *3. In *Malaska v. Saldivar Coastal Services, Inc.*, No. 2:16-CV-117, 2017 WL 1452584, at *10 (S.D. Tex. Apr. 20, 2017) (Tagle, J.), this Court denied conditional certification for overtime claims in part because the purported class included up to 1,400 employees. *Id.* ("[G]ranting certification on this overtime issue to 1,400 potential plaintiffs would create serious manageability concerns because the parties and Court would need to consider the overtime records of a potentially enormous number of opt-in plaintiffs.").

### III.   Analysis

Shaw argues that conditional certification is appropriate because all Junior Operators, Operators, Field Operators, and Pressure Testers "performed the same essential job duties and were subjected to the same conditions of employment." *Dkt. No. 11 at ¶ 20*. Shaw argues that the employees that fall into these job categories are "similarly situated" employees because the defendant misclassified them all as exempt from the overtime requirements of the FLSA despite the fact that their job duties consisted primarily of manual and technical labor. According to Shaw's

motion, Shaw, Silos, D.A. Meza, and J.D. Meza, for example, "worked in the oil fields, at rig sites, performing hard manual labor performed in all kinds of weather conditions." *Id. at ¶ 6*. Shaw alleges that he "and those he worked with [ ] worked in the field for weeks at a time, working seven days a week, 12 to 16 hours per day, and then taking several days off before going into the field again." *Id*. They "were paid on a salary basis and were also paid daily bonuses for each day they worked in the field. . . . [but] were never paid an overtime premium for hours worked over 40 in a workweek." *Id*. Shaw argues that "other individuals were employed in similar positions to Plaintiff [because they are or were employees] compensated in the same manner as the Plaintiff and the opt-ins: they were paid a salary and daily or job bonuses." *Id. at ¶ 7*. "The other employees of Defendant who were employed in similar positions as the Plaintiff also regularly work over 40 hours per week without being paid the overtime premium." *Id*. Shaw argues that the work performed and method of compensation were consistent across all of Jaguar's locations, and that the employees were similarly situated. *Id. at ¶ 8*.

Jaguar opposes the motion for conditional certification and argues that Shaw seeks to certify "a large and very diverse group of Jaguar employees—'Junior Operators,' 'Operators, 'Field Operators,' and 'Pressure Testers'—who are unsuitable for collective treatment" under the FLSA. *Dkt. No. 35 at 1*. Jaguar argues that the evidence shows that "numerous variables affect daily conditions and duties of the putative class members, thus requiring a highly individualized inquiry as to damages and defenses available to Jaguar." *Dkt. No. 35 at 2*. Jaguar argues that the majority of the putative class's job duties changed daily because of variables including "the demands of the company man, the client and the specific worksite." *Dkt. No. 35 at 3*. Jaguar also points out that each job title represents a separate set of functions and/or levels of experience required for that position. Jaguar also argues that the various locations of Jaguar's employees in Pennsylvania, Texas, and New Mexico weigh against conditional certification because each site has its own management structure. *Id. at 12*.

Jaguar further argues that the putative class members received varying pay and had differing levels of eligibility for bonuses. *Id. at 15* (citing to various declarations of Jaguar employees providing their pay structure); *see also Dkt. No. 35 Ex. D. at JAG000367, at ¶ 2* (Juan Alberto Nava stating that he "ha[s] worked for Jaguar as an operator for approximately 3 years and 6 months as a helper" and that "[d]during the entire time, [he] ha[s] been paid hourly including overtime"); *id. at JAG000368, at ¶ 2* (Juan C. Gonzalez stating that he has "worked for Jaguar as a helper/operator for approximately 1 year and 6 months" and "[d]uring this entire time, [he] ha[s] been paid hourly including overtime"); *id. at JAG000379, at ¶ 4* (Santos Gonzalez stating that "[a]s a junior operator, [he is] paid an hourly wage and then overtime pay for over 40 hours a week"); *id. at JAG000384, at ¶ 4* (Ramiro Reyna stating that when he worked "as a junior operator, [he] was paid hourly").

Jaguar also argues that the purported plaintiffs are not similarly situated because Jaguar paid an hourly wage for varying periods of time. *See Dkt. No. 35 at 16; Dkt. No. 35 Ex. C at 34:5–14* (Rodriguez testifying that he was paid both salary plus bonus and hourly at different times during his employment with Jaguar); *Dkt. No. 35 Ex. E* at 39:7–19 (Shaw testifying that he was paid hourly and switched to salary subsequently).

In response to this Court's Order requiring Jaguar to clarify certain tiems, Jaguar has indicated that there are:

- Approximately five employees of Jaguar that fall into the category of Junior Operator, and that all Junior Operators hired during the relevant time period were hired in Texas. Junior Operators are classified as exempt employees.
- Approximately twenty-nine employees currently hold or previously held the title of "Test Pump Operator"[4] at Jaguar during the relevant time period. Of

---

[4] Jaguar argues that Plaintiffs used the incorrect title of "Operator" in its briefing. Jaguar alleges that it does not employ any workers with the job title of "Operator," and, rather, employs "Test Pump Operators" and "Lubricator Operators." *Dkt. No. 50 at 2.* Jaguar has, accordingly, provided the information ordered by the Court as to the titles of Test Pump Operators. Jaguar does not provide any information as to the number of Lubricator Operators, the status of Lubricator Operators as exempt or non-exempt, or the geographic locations in which Lubricator Operators work. Jaguar provides, "The testimony thus far of all witnesses, including the lead Plaintiffs in this matter, has

- these individuals, eight were hired in Pennsylvania, while twenty-one were hired in Texas during the relevant time period. Test Pump Operators are classified as exempt employees.
- Jaguar does not employ any workers with the title "Field Operator" or "Pressure Tester." However, Jaguar acknowledges that the term "Pressure Tester" is a "commonly used term throughout the industry and possibly resembles the Jaguar title of 'Test Pump Operator' which can also have an additional descriptor or level-based classification of 'Junior' depending on the employee's skill level and overall experience." *See Dkt. No. 50 at 2–4.*

Shaw responds to Jaguar's Supplemental Briefing by arguing that Lubricator Operators should be included in any potential putative class. *Dkt. No. 51 at 1* (stating that "Jaguar's argument is apparently that the terms 'Operator' and 'Junior Operator' should *both* be applied to Test Pump Operators *only* and that the Lubricator Operators should not be part of any potential putative class."). Shaw also argues, "It is interesting to note that, in Exhibit E to its Response to Plaintiff's Motion for Conditional Certification, Jaguar attached a number of declarations from employees in which their job titled was stated as being something other than 'Test Pump Operator' or 'Lubricator Operator. . . . These declarations demonstrate that the term 'operator' is regularly used by employees at Jaguar to designate their job title." *Id.* at 2 (erroneously indicating that the declarations were filed as Exhibit E, when Jaguar filed the declarations as Exhibit D). *See Dkt. No. 35 Ex. D.* Shaw argues that "the term 'operator' is regularly used by employees at Jaguar to designate their job title," Dkt. No. 51 at 2, and asks the Court to include Test Pump Operators and Lubricator Operators in the conditional class. *Id.*

The Court finds that on the pleadings, affidavits, and supplemental briefing as ordered by the Court, conditional certification as to Junior Operators, Test Pump

---

been consistent in its distinction that the Test Pump Operator job and its duties are wholly different than that of a Lubricator Operator. In addition to the differences in job duties, locations worked, and other variable factors, the different types of Operators are paid differently. For example, some Test Pump Operators may be eligible to receive multiple job bonuses in one day whereas, for a Lubricator Operator, this would be a rare occurrence." *Id.* at 2–3.

Operators,[5] and Lubricator Operators for employees that have worked for Jaguar is appropriate at this first *Lusardi* stage. Because at this early stage, the Court has minimal evidence before it, the Court must apply a "fairly lenient standard." *See Mooney*, 54 F.3d at 1214 n.8. Here, Shaw has met his burden to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists and wants to opt into the lawsuit by attaching the affidavits of D.A. Meza, J.D. Meza, and Rodriguez. Additionally, considering that this is a case asserting a violation of overtime provisions of the FLSA, Shaw has shown that the aggrieved individuals are similarly situated to him in relevant respects because the briefings demonstrate a *bona fide* dispute between Jaguar and prospective plaintiffs as to whether Junior Operators, Test Pump Operators, and Lubricator Operators are exempt or non-exempt employees. Because Jaguar asserts that these individual were exempt employees, whereas Shaw argues that such employees were in fact non-exempt, Shaw's case is not one "purely personal" to him, and instead, is one that challenges a "generally applicable rule, policy, or practice." *Aguirre*, No. H-05-3198, 2006 U.S. Dis. LEXIS 22211, at *15. The discrepancy in classification demonstrates that the alleged overtime violations "were more than sporadic occurrences." *Barron*, 242 F. Supp. 2d at 1104.

Though the job descriptions of Junior Operators, Test Pump Operators, and Lubricator Operators vary, under the FLSA, "[s]imilarly situated does not necessarily mean identically situated." *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *4; *England*, 370 F. Supp. 2d at 507. Here, Shaw alleges a general scheme of misclassification of employees. Therefore, even if there are different job functions among employees, the limited evidence before the court shows that, in general, the prospective class members performed manual labor and generally did not have supervisory functions. *Cf. Aguirre*, No. CIV.A. H-05-3198, 2006 WL 964554, at *6 (denying conditional certification in part because the court's inquiry "would extend

---

[5] This includes Shaw and other "Pressure Testers," which as Jaguar clarifies is a commonly used term throughout the industry and resembles the Jaguar title of "Test Pump Operator." Dkt. No. 50 at 4.

into the number of employees supervised; the ability to recommend hiring, firing, and reprimanding workers; the employee's opportunity to exercise discretion, and the amount of time the employee spends on nonmanagerial tasks."). Therefore, though Jaguar argues that each employee may be subject to a fact-specific exemption analysis, that potential "exemption analysis does not militate against conditional certification at this stage." *Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *4 (also stating that the employer, not the employee, has the burden to prove that an FLSA exemption applies, and that judges of this Court have refused to shift the burden to the employee on a motion for conditional certification, "determin[ing] instead] that exemptions are merit-based and not relevant at the notice stage") (quoting *In re Wells Fargo Wage & Hour Emp. Prac. Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *28 (distinguishing cases on this ground)).

Additionally, though Jaguar argues that Shaw seeks to certify "a large and very diverse group of Jaguar employees," *see Dkt. No. 35 at 1*, its supplemental brief in response to this Court's Order suggests that the purported class would not, in fact, be large in comparison to other classes that courts have certified at the first *Lusardi* stage. Although the Court does not have before it the number of Lubricator Operators Jaguar employed during the relevant time period, the fact that there are only five employees of Jaguar that fall into the category of Junior Operator and only twenty-nine employees that currently hold or previously held the title of Test Pump Operator suggests that the number of Lubricator Operators employed by Jaguar during the relevant time period is also modest. Therefore, even taking into account manageability concerns regarding collective action, this case presents a similar range of possible plaintiffs as *Jaso*. *Compare Jaso*, No. 2:15-CV-269, 2015 WL 11144603, at *1, *3 (granting plaintiff's motion for conditional certification of approximately thirty to fifty representatives of an oilfield services company) *with Malaska*, No. 2:16-CV-117, 2017 WL 1452584, at *10 (denying conditional certification a purported class of up to 1,400 employees). Therefore, like in *Jaso*, the Court finds that given the light burden applicable to plaintiffs at this preliminary stage, conditional certification is appropriate.

## IV. Conclusion

Having considered Shaw's motion, briefings, and the relevant law, this Court **GRANTS** Shaw's Motion for Conditional Certification, Dkt. No. 11.

The Court grants conditional certification on Shaw's overtime claim for all individuals who had the job title of Junior Operator, Test Pump Operator,[6] and Lubricator Operator when employed by Jaguar.

The Court further **ORDERS**:

- Plaintiffs to file by September 15, 2017:

    (1) a Notice Letter consistent with this Order

    (2) a Notice of Consent Form; and

    (3) a Proposed Order approving both for transmission

- Jaguar shall file objections, if any, to the Notice Letter and Notice of Consent Form by September 22, 2017.

- Parties shall file an amended Joint Discovery/Case Management Plan by September 29, 2017.

SIGNED this 5th day of September, 2017.

Hilda Tagle
Senior United States District Judge

---

[6] This includes "Pressure Testers."